**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Kelvin Gerald Dix,

Plaintiff,

v.

IAC Warren, LLC,

Defendant.

Case No. 24-11904

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

______________________________/

# ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS [45]

Before the Court is Defendant IAC Warren, LLC's[1] motion for sanctions. (ECF No. 45.) Plaintiff Kelvin Dix, who appears *pro se*, filed a response, and Defendant filed a reply. (ECF Nos. 48, 49.)

For the reasons set forth below, Defendant's motion is granted. (ECF Nos. 45.)

[1] At the time of the complaint and until the case caption was amended on June 25, 2026 (ECF No. 35), Defendant was referred to as "International Automotive Components," not "IAC Warren, LLC," and Plaintiff identified himself as "Kevin Dix," not "Kelvin Dix," which is his name.

## I. Background

The complaint in this case was filed on July 24, 2024. (ECF No. 1.) Plaintiff brought suit against Defendant under Title VII, 42 U.S.C. § 1981, and the Michigan Elliott-Larsen Civil Rights Act, alleging race discrimination, hostile work environment, and retaliation. (*Id.*) Plaintiff claims that he experienced racial harassment from his manager, co-workers, and others while working as an employee of Defendant, and that he was terminated on false pretenses after he filed complaints and grievances about the harassment. (*Id.* at PageID.3–8.) Plaintiff's complaint was filed by his counsel: Gregory, Moore, Brooks & Clark, P.C. and Marko Law, PLLC. (*Id.* at PageID.1.)

Defendant filed an answer to the complaint on September 30, 2024. (ECF No. 6.) The Court entered a scheduling order on November 27, 2024, which set the end of discovery as July 22, 2025. (ECF No. 9.) The end of discovery was extended to October 20, 2025, by stipulated order on July 17, 2025. (ECF No. 14.)

The discovery disputes in this case began over a year ago in August 2025. On August 19, 2025, Plaintiff was deposed. He was questioned about text messages he sent to a witness in this case. (ECF No. 45-4,

PageID.411–412.) In the deposition, Plaintiff testified that he has a habit of deleting text messages. (*Id.* ("I normally delete texts, so yes, I have deleted text messages . . . . Normally if it's not important and someone text me or something, then I'll delete it.").) As a result of Plaintiff's testimony, Defendant became concerned that some of Plaintiff's text messages were not preserved or produced because they had been deleted. As required by the Court's practice guidelines on discovery disputes, the parties informed the Court by email that they had a dispute regarding whether Plaintiff deleted relevant text messages, whether a forensic imaging[2] of Plaintiff's phone was in order to recover deleted messages, and what protocol the forensic imaging should follow. (ECF No. 45-3, PageID.306–307.)

On September 2, 2025, the Court held a discovery dispute status conference and ordered Plaintiff to provide his cell phone for forensic imaging by 5 p.m. that day. The Court also gave the parties 48 hours to negotiate a stipulated order regarding the digital forensic protocol. (*See*

[2] Forensic imaging is the process of creating a replica of a computer's hard drive (or other device that stores data). *See Delta T, LLC v. Williams*, 337 F.R.D. 395, 400 (S.D. Ohio 2021); (ECF No. 45-2, PageID.286 ("A forensic image is a snapshot of the device at the time of imaging . . . .").)

ECF No. 17 (stipulated order).) The discovery deadline was further extended to May 1, 2026. (ECF No. 19.)

On February 17, 2026, Plaintiff's counsel at that time—Gregory, Moore, Brooks & Clark, P.C. and Marko Law, PLLC—filed a motion to withdraw as counsel due to a "breakdown in the attorney-client relationship." (ECF No. 20.) The Court granted the motion to withdraw and stayed the case for thirty days to permit Plaintiff to find new counsel. (ECF No. 21.) On March 18, 2026, Plaintiff filed a notice informing the Court that he would be representing himself until he found an attorney. (ECF No. 24.)

On March 26, 2026, the Court received an email from Defendant requesting a second status conference. Email from Elizabeth L. Bolduc, Counsel for Defendant, to William Barkholz, Case Manager to Judge Judith E. Levy (Mar. 24, 2026, 11:55 AM EDT) (on file with the Court). The email was also sent to Brandyn Mungo, who appeared to have represented Plaintiff for a limited period around this time. Defendant requested a status conference to address Mr. Mungo's representation of Plaintiff because he had not filed a notice of appearance in the case, and there were outstanding discovery disputes that remained unresolved

despite the approaching discovery deadline. *Id.* Later that same day, the Court received an additional email from Defendant. Email from Elizabeth L. Bolduc, Counsel for Defendant, to William Barkholz, Case Manager to Judge Judith E. Levy (Mar. 24, 2026, 3:54 PM EDT) (on file with the Court). This second email stated that Defense counsel received a phone call from Mr. Dix, who informed Defense counsel that Mr. Mungo did not represent him and that he was proceeding *pro se*. *Id.* Defendant reiterated that there were several outstanding discovery issues, including a request for a court order for Plaintiff to supplement his production "of communications with any individuals relating to Mr. Dix's employment, separation from employment, or the claims asserted in this lawsuit, as deposition testimony revealed the existence of messages not produced in discovery, raising concerns regarding potential spoliation." *Id.*

The Court held a status conference on April 9, 2026 to consider these issues. At this status conference, Mr. Dix confirmed that Mr. Mungo was not representing him, that he was planning on proceeding *pro se*, and that he was still searching for representation. The Court set several deadlines. Plaintiff was told that the case would be stayed until

May 15, 2026, the date by which he was required to file the appearance of new counsel or indicate that he would proceed *pro se*. (ECF No. 27, PageID.121.) Plaintiff was also ordered to file a notice on May 15, 2026 confirming that his legal name is Kelvin Dix, not Kevin Dix. (*Id.*)

Plaintiff obtained new counsel—Solomon M. Radner—but failed to comply with the Court's order to file a notice of appearance of counsel and to file a notice confirming his legal name by May 15, 2026. Mr. Radner filed a notice of appearance on May 21, 2026, (ECF No. 28), and Plaintiff did not take steps to correct his name on the docket until June 24, 2026. (*See* ECF No. 35.)[3] The Court held another status conference on May 21, 2026, and ordered the parties to submit a proposed amended scheduling order by May 29, 2026. (*See* Minute Entry, May 21, 2026.)

The parties failed to submit a proposed amended scheduling order by May 29, 2026. On May 29, 2026 at 3:55 PM EDT, Defendant filed a motion for an order to show cause stating that it sent correspondence to Plaintiff's counsel on May 22, 2026, "outlining several outstanding discovery deficiencies that require a response from Plaintiff along with

[3] The Court's records indicate that this stipulated order was submitted through CM/ECF's Utilities function on June 24, 2026.

defense counsel's availability to confer regarding those issues and the proposed amended case schedule." (ECF No. 29, PageID.126–127.) According to Defendant, "Plaintiff's counsel failed to respond to this correspondence and did not otherwise contact defense counsel regarding the proposed amended case schedule" and, as a result, "Defendant is unable to comply with the Court's May 21, 2026 Order." (*Id.* at PageID.127.) The discovery deficiencies communicated to Plaintiff by Defendant on May 22, 2026 concerned, among other items, text messages between Plaintiff and witnesses from September 2, 2025 to the present that were not produced and may have been deleted by Plaintiff. (ECF No. 29-1.)

Plaintiff's counsel did not dispute that he failed to respond to Defendant's correspondence, but described the motion as "improper, discourteous, and unnecessary." (ECF No. 30, PageID.139.)

The Court held a hearing on Defendant's motion for an order to show cause on June 25, 2026. (ECF No. 32.) At the hearing, the parties acknowledged that the proposed scheduling order issue was resolved,[4]

[4] The parties submitted a proposed scheduling order on June 18, 2026. (*See* ECF No. 33.)

but discovery issues remained. The Court stated, on the record, that communications related to the litigation between Plaintiff and other witnesses from September 2, 2025 to the present must be produced by July 17, 2026. The Court denied without prejudice Defendant's motion for an order to show cause (ECF No. 36), but verbally warned Plaintiff's counsel that it was troubled by the progress of discovery in this case and that sanctions may be appropriate in the future.

On July 13, 2026, Mr. Radner filed a motion to withdraw as Plaintiff's counsel. (ECF No. 37.) That same day, Defendant's counsel sent an email to the Court and Mr. Radner informing the Court of a discovery dispute. (ECF No. 45-3, PageID.406.) As set forth in the email, Plaintiff provided a supplementary production of text messages on June 25, 2026, and claimed that the production "represented the complete text message chains on Mr. Dix's cell phone." (*Id.*; *see also id.* at PageID.369–376.) However, this production did not include text messages that were discussed and provided by witnesses during the deposition of those witnesses. (*Id.* at PageID.406.) As a result, Defendant believed that Mr. Dix deleted additional text messages after the forensic imaging on September 2, 2025. (*Id.*)

On July 27, 2026, the Court held a hearing on Plaintiff's counsel's motion to withdraw and the discovery dispute described in Defendant's July 13, 2026 email. At the hearing, Defendant requested that Plaintiff's phone be forensically imaged a second time to recover deleted text messages, this time at Mr. Dix's cost, among other possible sanctions. (ECF No. 41, PageID.183–184.) Mr. Dix, who was present at the hearing, denied deleting any text messages and claimed that he complied with Defendant's requests for discovery. (*Id.* at PageID.186.) The Court ordered Mr. Dix to bring his cell phone to Defendant's forensic examiner by 5 p.m. that day and to pay up to $5,000 for the costs of the forensic examination. (ECF No. 39, PageID.164.) The Court warned Mr. Dix that failure to comply with this order could result in sanctions, including dismissal. (*Id.* at PageID.164–165 ("In the event that Mr. Dix fails to conform to this Order, Defendant is authorized to file a motion for sanctions."); ECF No. 41, PageID.185 (stating that if Plaintiff does not comply with the order regarding the forensic examination, then the Court "will authorize [Defense counsel] to seek the sanction of dismissal of this case for your conduct during discovery, which has been exceptionally

negative”).) Finally, Mr. Radner’s motion to withdraw was granted. (ECF No. 42.)

Mr. Dix did not comply with the Court’s July 27, 2026 order. It is undisputed that Plaintiff attempted to deliver his phone to the forensic examiner, but did not provide $5,000 or any amount of money for the costs of the forensic examination. (ECF No. 48, PageID.492; ECF No. 45, PageID.220; ECF No. 45-3, PageID.407.) Defendant subsequently filed this motion for sanctions. (ECF No. 45.)

## II. Legal Standard

Defendant moves for dismissal of the case under Federal Rule of Civil Procedure 37(b)(2)(A).[5] (ECF No. 45, PageID.201.) Rule 37(b)(2)(A) states that if a party fails to obey an order to provide or permit discovery, the Court may issue an order for sanctions, including but not limited to dismissing the action or proceeding.

> Four factors are to be considered in determining whether dismissal is an appropriate sanction for failure to comply with a discovery obligation or other court order:

[5] Defendant also moves for dismissal of the case under Federal Rule of Civil Procedure 37(e)(2)(C). (ECF No. 45, PageID.201.) Because the Court finds that dismissal is appropriate under Rule 37(b)(2)(A), it declines to conduct an analysis of dismissal under Rule 37(e)(2)(C).

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Mager v. Wis. Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *Id.* (quoting *Reyes*, 307 F.3d at 458). "Contumacious conduct refers to behavior that is perverse in resisting authority and stubbornly disobedient." *Id.* (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013)).

## III. Analysis

The Court finds that dismissal is an appropriate sanction in this case under Federal Rule of Civil Procedure 37(b)(2)(A).

### A. Willfulness, bad faith, or fault

The first factor favors dismissal. "To show that a party's failure to comply was motivated by bad faith, willfulness, or fault, the conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'" *Mager*, 924

F.3d at 837 (quoting *Carpenter*, 723 F.3d at 705). Here, the Court believes that Plaintiff's actions display contumacious conduct.

It is indisputable that Plaintiff failed to comply with his obligations to produce and preserve evidence. As set forth previously, Plaintiff testified in his deposition on August 19, 2025 that he "normally deletes texts," and stated that he deletes text messages that are "not important." (ECF No. 45-4, PageID.411–412.) Although Plaintiff said that he did not "recall deleting any" text messages after he filed the complaint in July 2024, the September 2, 2025 forensic imaging of Plaintiff's phone revealed 1,129 records that had been deleted and that at least some of those were deleted after July 2024. (ECF No. 45-2, PageID.285.) For example, the forensic imaging recovered a deleted text message sent on August 11, 2025 from Plaintiff to a witness named Christopher Dawkins; as such, the text message must have been deleted after the complaint in this case was filed. (*Id.* at PageID.285, 301.)

In fact, it is likely that many—if not all—of the recovered text messages were deleted after the complaint was filed in July 2024. As set forth by Scott A. Bailey, a digital forensic consultant with N1 Discovery LLC, the company that performed the forensic imaging, "deleted data

may remain recoverable only for a limited period" and "forensic examinations are generally much less likely to recover messages that were deleted months or years before the device was forensically imaged." (*Id.* at PageID.286.) Given that the forensic imaging occurred on September 2, 2025, over a year after the complaint was filed, it is likely that all of the recovered text messages were recoverable because they were deleted only a few months before September 2, 2025 and, as such, after the complaint was filed in July 2024.

This also demonstrates that there are many text messages sent and received by Plaintiff that are irreversibly lost. For example, Plaintiff's deleted text messages with Dion Washington appear to be incomplete, which indicates that some of the text messages sent by Plaintiff and Washington are unrecoverable. (*Id.* at PageID.286, 302 (displaying deleted text message, which lacks data on the date and time sent, to Washington discussing Plaintiff's potential termination).) If a text message was deleted months or even a year before September 2, 2025, it is likely that the data was overwritten and the text message is lost forever.

Further, there is evidence that Plaintiff deleted relevant text messages after his cell phone was forensically imaged on September 2, 2025. For example, on January 22, 2026, witness Christopher Dawkins was deposed in this case. (ECF No. 45-5.) During the deposition, Dawkins was asked to reveal his text messages with Plaintiff, which reflected that Dawkins and Plaintiff had exchanged text messages earlier that day. (*Id.* at PageID.432–433.)[6] However, these text messages did not appear in

---

[6] Q. Can you show me any text messages you have with Mr. Dix?

A. (Witness complies.)

Q. Okay. So for the record, there is a bunch of text messages here, including talking about today's deposition. Mr. Dawkins says, "Nobody's here. Stenographic person is here. We are in the lobby, can't talk. It has echos. [*sic*] Okay. Your lawyer is not here. Do I continue without?" Dix says, "No, you should not." Chris says, "Okay." Dix says, "Tell them you want a lawyer present because your testimony is sworn in." Chris says, "Okay." Dawkins says, "I have to call Matt and reschedule since they not there. You need to understand the rules and questions, won't say anything detrimental, so you need a lawyer there or it need [*sic*] to be rescheduled. They can't force you to give testimony without counsel. The attorney says done start deposition until the attorney get there. He will be there soon. Are you good? The lawyer on his way. He said do not start until he arrives." Those are all text messages from Dix. You don't dispute those are text messages from Dix, correct?

A. Yeah.

Q. Those are true and accurate?

A. Mm-hmm, yes.

Plaintiff's June 25, 2026 response to Defendant's Request for Production, which, according to Plaintiff, included screenshots of all text messages sent between Plaintiff and Dawkins and Washington since September 2, 2025. (*See* ECF No. 45-3, PageID.377–402.) However, the text messages described in Dawkins' January 22, 2026 deposition are not included in his production.

Similarly, at Dion Washington's deposition on January 23, 2026, Washington revealed that he received text messages from Plaintiff on January 22, 2026.[7] (ECF No. 45-6, PageID.437.) Despite Plaintiff's claim that the text messages attached to his June 25, 2026 responses constituted "all" of the texts between him and Washington since September 2, 2025, the text messages discussed in Washington's deposition do not appear in Plaintiff's June 25, 2026 discovery responses. (*See* ECF No. 45-3, PageID.377–402.)[8]

---

(ECF No. 45-5, PageID.432–433.)

[7] Plaintiff sent Washington a "picture of a young lady in a bikini" and an "article online about something that happened in Houston, Texas." (ECF No. 45-6, PageID.437.)

[8] The Court notes that Washington testified that he deleted all of his text messages with Plaintiff and that these were the only texts he had. (ECF No. 45-6, PageID.437.)

Additionally, witness Shari Borst stated at her deposition on January 23, 2026 that she, too, deletes text messages and revealed that she exchanged text messages with Plaintiff on December 11, 2025. (ECF No. 45-7, PageID.439 (describing text messages exchanged between Borst and Plaintiff about a racial harassment lawsuit filed by a black firefighter).) Despite Borst testifying about her December 11, 2025 text messages with Plaintiff, Plaintiff did not set forth in his June 25, 2026 discovery responses that he had these communications with Borst. (*See* ECF No. 45-3, PageID.375 (stating only that he had communications with Dawkins and Washington since September 2, 2025); *id.* at PageID.371 (stating that Plaintiff "has not communicated with any IAC people regarding the subject matter of this action" since September 2, 2025); *id.* at PageID.373–374 (stating that his previous productions and the September 2, 2025 forensic imaging contain all of his text messages that contain search terms such as "discrim!," "race," or "racial").)

Because Plaintiff continued deleting text messages, even after his cell phone was forensically imaged on September 2, 2025 for the purpose of retrieving deleted text messages, the Court ordered Plaintiff to bring his cell phone to Defendant's forensic examiner by 5 p.m. on July 27, 2026

and to pay up to $5,000 for the costs of the second forensic imaging of his cell phone. (ECF No. 39, PageID.164.) Plaintiff failed to comply with this order because he did not provide $5,000, or any amount, to cover the costs of the second forensic imaging.

In short, Plaintiff has repeatedly demonstrated willful and contumacious conduct when he refused to follow the Court's July 27, 2026 order, engaged in spoliation of evidence, and did not give truthful discovery responses. Plaintiff deleted relevant text messages after he filed the complaint in July 2024, some of which appears to be irreversibly lost. Plaintiff continued to delete relevant text messages after his phone was forensically imaged on September 2, 2025. Plaintiff's June 25, 2026 responses to Defendant's interrogatories and requests for production were not accurate. And Plaintiff failed to pay up to $5,000 for the forensic imaging of his phone on July 27, 2026, to recover these additional, deleted text messages.

The Court is also troubled by Plaintiff's repeated representation that he did not delete text messages and that he has complied with Defendant's discovery requests. (*See* ECF No. 41, PageID.186; ECF No. 48, PageID.493.) Again, Plaintiff testified in his deposition that he

deletes text messages, his June 25, 2026 discovery responses contained inaccurate statements, and there is evidence of over 1,000 deleted text messages from the September 2, 2025 forensic imaging, and evidence of deleted text messages after the September 2, 2025 forensic imaging.[9]

Plaintiff first suggests that his text messages were not "intentionally deleted" and that Defendant has not presented evidence of such. (ECF No. 48, PageID.493 (arguing that "[p]hones routinely auto-delete old messages, overwrite storage, clear cache, and rotate logs" and that "[n]one of this constitutes intentional deletion of spoliation").) Not so. Plaintiff testified that he deletes text messages. (ECF No. 45-4, PageID.411–412.) Plaintiff does not present any evidence that his cell phone "automatically" deletes old text messages. And even if his phone automatically deletes old text messages, Plaintiff, as a litigant in this

[9] Defendant argues in its motion that Plaintiff also engaged in "witness intimidation" when Plaintiff contacted the company that conducted the forensic imaging on his phone, and also characterizes Plaintiff's texts with Dawkins as Plaintiff "influenc[ing] witness testimony" by "instructing [Dawkins] on how to handle himself at a deposition." (ECF No. 45, PageID.214–215, 225.) Plaintiff opposes this characterization of some these incidents. (ECF No. 48, PageID.493–494.) The Court declines to make a finding related to Plaintiff's possible "witness intimidation" or "influencing of witness testimony" because it is unnecessary for the outcome of this motion.

case, had an obligation to preserve evidence at the time he filed the complaint, if not before. *See Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) ("An obligation to preserve [evidence] may arise when a party **should have known** that the evidence may be relevant to future litigation." (quoting *Beaven v. U.S. Dep't of Justice*, 662 F.3d 540, 553 (6th Cir. 2010))) (emphasis added).

Plaintiff also argues that there is no evidence that "any deletion occurred after litigation began." (ECF No. 48, PageID.493.) As set forth above, there are several examples of text messages that were deleted after the complaint was filed in July 2024.

Next, Plaintiff claims that there is no evidence that "any deletion was done to hide evidence." (*Id.*) The Court disagrees. There is no rational, good-faith explanation for Plaintiff's failure to preserve text messages after his phone was forensically imaged on September 2, 2025.[10] After September 2, 2025, it is safe to say that Plaintiff was fully aware of his discovery obligations, especially regarding deleted text

[10] The Court also believes that there is no rational explanation for Plaintiff's failure to preserve text messages after he filed his suit in July 2024, but his failure to do so after September 2, 2025 is indefensible.

messages, and yet he continued to delete relevant text messages with witnesses.

Finally, Plaintiff argues that he was unable to comply with the Court's July 27, 2026 order because he could not afford to pay $5,000 (*Id.* at PageID.493, 495.) The Court understands that $5,000 is a significant amount of money and recognizes that Plaintiff brought his cell phone to the forensic examiner on July 27, 2026. However, the Court ordered Plaintiff to pay up to $5,000 for the forensic examination because it is not reasonable for Defendant to bear the costs when Plaintiff continued to delete relevant text messages, thus necessitating the second forensic imaging.

Plaintiff's argument that the "forensic scan order requires clarification," (*id.* at PageID.495), is rejected because the Court's order was clear. Plaintiff was aware that Defendant sought "a second forensic examination of Mr. Dix's phone that Mr. Dix is required to pay for," (ECF No. 41, PageID.180), and did not raise issues of affordability during the oral argument on the second forensic imaging and Defendant's request that Plaintiff cover the costs of the imaging. (*See id.* at PageID.180–185.) The Court's written order clearly stated that Plaintiff was to deliver his

cell phone to the forensic examiner **and** pay for the costs of the forensic examination up to $5,000. (ECF No. 39.) Plaintiff's argument that "the vendor refused to accept the device solely because Plaintiff could not afford the $5,000 fee" is irrelevant. (ECF No. 48, PageID.492.) Defendant's vendor was under no obligation to conduct the forensic imaging of Plaintiff's cell phone without payment, and Defendant was under no obligation to cover the costs of the imaging (a second time) given that the Court ordered Plaintiff to cover up to $5,000 of the cost.

As such, the Court finds that Plaintiff's failure to follow the Court's July 27, 2026 order, spoliation of evidence, and failure to give truthful discovery responses constitutes "bad faith, willfulness, or fault." *Mager*, 924 F.3d at 837.[11] The Court also finds that Plaintiff's conduct rises to the level of contumacious conduct, and, as such, dismissal of this action

[11] The Court notes that Plaintiff's willful and contumacious conduct is attributable to Plaintiff himself, not his previous counsel. *See Carpenter*, 723 F.3d at 704 ("Dismissal is usually inappropriate where the neglect is solely the fault of the attorney."). Plaintiff himself is responsible for the deletion or failure to preserve relevant text messages, before and after the forensic imaging on September 2, 2025. He was also aware of his obligation to obey the Court's July 27, 2026 order but failed to do so.

is proper on this factor alone. *Id.* However, the Court will address the other factors as well.

**B. Prejudice to Defendant**

The Court must consider whether Defendant was prejudiced by Plaintiff's conduct and if Defendant wasted "time, money, and effort in pursuit of cooperation which [Plaintiff] was legally obligated to provide." *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 522 (6th Cir. 2016) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)). This factor is easily met.

The discovery disputes in this case have been ongoing for over a year. The Court was first informed of issues surrounding deleted text messages on August 28, 2025, (ECF No. 45-3, PageID.306), and deleted text messages continue to be an issue a year later. These issues have caused a considerable delay in the litigation of this suit.

Additionally, Defendant has been prejudiced due to the enormous effort it has expended in attempting to obtain discovery and correct discovery deficiencies in this case. (*See, e.g.*, ECF No. 45-3 (Defendant's exhibits presenting over 100 pages of correspondence related to discovery

in this matter); ECF No. 29 (Defendant's motion for an order to show cause).)

Defendant has been financially burdened by Plaintiff's conduct. Amy S. Meiring, a paralegal with Defense counsel, submitted a declaration stating that the costs of the forensic examination of Plaintiff's phone totaled $14,971.75. (ECF No. 46, PageID.441.)

Finally, there is evidence that there are text messages that are irreversibly lost, despite the September 2, 2025 forensic imaging. *See supra* III.A. The loss of these text messages prejudices Defendant because those text messages could have been relevant to its defense.

Thus, this factor weighs in favor of dismissal.

**C. Prior Warning**

The third factor is "whether the dismissed party was warned that failure to cooperate could lead to dismissal." *Carpenter*, 723 F.3d at 708. Here, there was sufficient warning. Plaintiff was warned at the July 27, 2026 hearing that, if he did not comply with the Court's order, the Court "[would] authorize [Defense counsel] to seek the sanction of dismissal of this case for your conduct during discovery, which has been exceptionally negative." (ECF No. 41, PageID.185.) The Court's written order also

warned Plaintiff of the potential for dismissal. (ECF No. 39, PageID.164–165.) This factor weighs in favor of dismissal.[12]

**D. Less drastic sanctions**

"The fourth factor asks whether less drastic sanctions were imposed or considered before dismissal was ordered." *Mager*, 924 F.3d at 840. Here, the Court required Plaintiff to pay up to $5,000 for the costs of his second forensic imaging of his phone, which he did not comply with. Additionally, the Court finds that lesser sanctions would not be appropriate considering Plaintiff's contumacious conduct in this case. This factor weighs in favor of dismissal.

**E. Dismissal**

The Court finds that dismissal of the suit is appropriate under Federal Rule of Civil Procedure 37(b)(2)(A). All four factors weigh in favor of dismissal and Plaintiff displayed contumacious conduct in this suit.

---

[12] "[W]hen 'a plaintiff has not been given notice that dismissal is contemplated, a district court should impose a penalty short of dismissal unless the derelict party has engaged in bad faith or contumacious conduct.'" *Mager*, 924 F.3d at 840 (quoting *Harmon*, 110 F.3d at 367 (internal quotation marks omitted)). Here, the Court finds that Plaintiff has engaged in contumacious conduct and, as such, dismissal is appropriate regardless of this factor.

Plaintiff, in his response to Defendant's motion, raises several issues that do not appear in Defendant's motion for sanctions. (ECF No. 48.) The Court will address those issues here.

Plaintiff argues that Defendant failed to send him a copy of his medical examination report, and that this demonstrates that Defendant has also violated its discovery obligations. (*Id.* at PageID.494.) Although Plaintiff claims that Defendant's failure to produce the report is a violation of Federal Rule of Civil Procedure 35(b), he does not adequately explain why. Rule 35(b) does not prescribe a specific time for a medical examiner's report to be produced, nor does Plaintiff explain why he is prejudiced by this alleged failure to produce. Finally, Defendant's potential discovery violations have no bearing on the fact that Plaintiff himself has violated the rules of discovery, repeatedly, for over a year and did not follow the Court's July 27, 2026 order.

The same is true for Plaintiff's arguments regarding Defendant's alleged failure to meet and confer with him regarding this purported Rule 35(b) violation,[13] and Plaintiff's argument that "Defendant's motion is a

[13] In this section of his response, Plaintiff appears to refer to his "motion to modify the forensic scan order" that was filed on August 4, 2026. (ECF No. 40.) This

strategic attempt to avoid trial." (ECF No. 48, PageID.495–496.) Defendant's potential violations or motivations are irrelevant to Plaintiff's own violations and failure to follow the Court's order.

Finally, Plaintiff states that his "prior cellphone was lost and had to be replaced." (*Id.* at PageID.494.) Plaintiff claims that the loss of his phone "does not prejudice Defendant" because "Defendant already obtained a full forensic image of the device during the September 2025 examination." (*Id.*) As set forth above, *see supra* III.A., there is evidence that relevant text messages were sent to witnesses after the September 2, 2025 forensic imaging and were then deleted. Plaintiff's statement that his lost cellphone does not prejudice Defendant is not well taken.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for sanctions is GRANTED. This case is dismissed pursuant to Federal Rule of Civil Procedure 37(b)(2)(A).

IT IS SO ORDERED.

---

motion was stricken by the Court on August 7, 2026, for failure to comply with the Court's discovery dispute protocol and is not a part of the record. (ECF No. 44.)

Dated: August 31, 2026
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 31, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager